J-S51021-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| TERRY MICHELLE MULLER, | : | |
| | : | |
| Appellant | : | No. 203 EDA 2018 |

Appeal from the Judgment of Sentence December 14, 2017
In the Court of Common Pleas of Pike County Criminal Division at No(s):
CP-52-CR-0000567-2016

BEFORE:  DUBOW, J., NICHOLS, J., and FORD ELLIOTT, P.J.E.

MEMORANDUM BY NICHOLS, J.:                    **FILED MAY 24, 2019**

Appellant Terry Michelle Muller appeals from the judgment of sentence imposed after a jury found her guilty of unlawful restraint, false imprisonment, endangering the welfare of children, simple assault, and harassment.[1] Appellant claims that the trial court erred when overruling her objection to the Commonwealth's late disclosure of text messages and videos recovered from her cellphone.  We affirm.

Because the parties are familiar with the facts giving rise to Appellant's convictions, we do not restate them here.  It suffices to note that an investigation began when Appellant's adopted daughter (Complainant) ran away from home on January 20, 2015.  Complainant, who was thirteen years

---

[1] 18 Pa.C.S. §§ 2902(c)(1), 2903(c), 4304(a)(1), 2701(a)(1), 2701(a)(3), 2709(a)(1), and 2709(a)(3), respectively.

old at that time, was found the following morning and reported that Appellant and her husband (Codefendant) mistreated her.[2]

On August 2, 2016, Appellant was charged with offenses related to her mistreatment of Complainant, and on August 5, 2016, was taken into custody. Appellant remained in custody until November 2017, when she and Codefendant proceeded to a joint jury trial.

We summarize the trial record relevant to this appeal. At the end of testimony on the second day of trial, Appellant's counsel objected to the Commonwealth calling a witness to testify about an extraction of data from Appellant's phone. N.T., 11/16/17, at 118. Appellant's counsel noted that an investigator had downloaded the entire contents of Appellant's phone to a flash drive, but only printed out a "six or seven-line text message from the thousands that were in there." *Id.*

The following morning, the trial court held a conference with counsel. *See* N.T., 11/17/17, at 5-15. During the conference, the Commonwealth explained that the Pennsylvania State Police initially seized Appellant's phone on February 3, 2016, when executing a search warrant. An investigator extracted the contents of Appellant's phone to a flash drive and then returned

---

[2] Codefendant's appeal is considered in a companion decision at 558 EDA 2018, J-S51022-18. A more complete summary of the trial evidence is set forth in that decision.

Appellant's phone to Codefendant on February 10, 2016.[3]  The Commonwealth asserted that it was entitled to admit the entire contents of Appellant's phone because the Appellant and Codefendant were in actual possession of Appellant's phone.

Appellant's counsel responded that Appellant and Codefendant lost Appellant's phone when their home was sold at a tax sale and noted that criminal charges against her were not filed until August of 2016.  Appellant's counsel emphasized that the defense requested discovery, and that in response, the Commonwealth provided them with two text messages found on Appellant's phone.  Appellant's counsel asserted that the Commonwealth's failure to provide information about the remaining contents of Appellant's phone violated its duty to disclose material information before trial.

The Commonwealth presented three arguments in support of its proffer.  First, the Commonwealth asserted that because Appellant had equal access to the phone, it was under no obligation to disclose the entire contents of Appellant's phone or identify all of the materials it intended to use at trial.[4]

_____

[3] The "Lantern System" was used to extract all of the data from Appellant's phone.  The Lantern System also produced a report of the data recovered from Appellant's phone.  The contents of Appellant's phone and the accompanying report were placed onto a flash drive.  **See** N.T., 11/17/17, at 18-20.  The flash drive was included in the record transmitted to this Court.

[4] The Commonwealth cited **Commonwealth v. Maldonodo**, 173 A.3d 769 (Pa. Super. 2017) (*en banc*), to support its arguments based on "equal access."

Second, the Commonwealth suggested that Appellant was aware that the Pennsylvania State Police extracted the contents of her phone, but did not file a motion requesting copies of the extracted data. Third, the Commonwealth questioned Appellant's assertions that Appellant lost her phone, noting, in part, that Appellant's counsel used photographs from Appellant's phone during cross-examination of the Commonwealth's witnesses.[5]

The trial court overruled Appellant's objections, and the Commonwealth presented testimony regarding the entire contents of Appellant's phone and an extraction report. The Commonwealth moved into evidence the flash drive containing a copy of the entire contents of Appellant's phone as Exhibit 21. Additionally, the Commonwealth played nine videos recovered from Appellant's phone during its case-in-chief and used some of the videos during its closing argument.[6]

---

[5] Appellant responded that the photographs she used during cross-examination were produced and preserved for a prior dependency proceeding involving Complainant.

[6] Our review reveals that the videos documented Appellant verbally disciplining Complainant in a harsh tone. Two of the videos show Complainant eating ramen noodles with her fingers while Appellant is heard talking to Complainant. In addition to playing the videos during its case-in-chief, the Commonwealth replayed some of the videos during its closing arguments. Appellant did not object to the specific publication or testimony regarding any of the videos or the Commonwealth's use of the videos at trial, and has not identified the specific portions the Commonwealth played at trial.

The record does not indicate whether the Commonwealth provided Appellant with copies of the flash drive, the extraction report, or the specific videos before presenting them at trial.

Appellant and Codefendant testified in their own defense. They denied abusing, mistreating, or depriving Complainant of any necessities or comforts. They admitted placing restrictions on Complainant, but asserted that those restrictions were necessary in light of Complainant's mental health and behavioral issues.[7] Appellant's biological children also testified for the defense.

On November 20, 2017, the jury found Appellant guilty of all charges. On December 14, 2017, the trial court sentenced Appellant to an aggregate term of 68 to 156 months' imprisonment.

Appellant timely filed a notice of appeal and complied with the trial court's order to submit a Pa.R.A.P. 1925(b) statement. The trial court filed a Rule 1925(a) opinion addressing its decision to admit the text messages and videos as follows:

> At trial, Appellant objected, essentially in the form of a motion *in limine*, to the Commonwealth's introduction of certain specific text messages and of portions of videos, featuring Appellant and [Complainant], obtained from . . . Appellant's cell phone. The cell phone was seized pursuant to a search warrant executed by the state police. Detective Christian Robinson testified that he was contacted by Corporal Smith to run a forensic extraction on Appellant's cell phone. He also testified as to how the data was obtained from Appellant's cell phone using the Lantern software system. He testified that the extraction report was performed on February 8, 2016. He testified that the extraction process would

---

[7] Appellant claimed that a therapist suggested that she take videos to show Complainant's defiant and aggressive demeanor, because Complainant did not display those traits during therapy sessions. *See* N.T., 11/20/17, at 21. Appellant stated that she showed the videos to the therapist. *Id.*

have no effect on or alter the contents of the cell phone in any way. He testified that the contents of the reports generated by the Lantern software system would be an exact replica of the contents of the cell phone. He testified that after he had completed the forensic extraction, he returned the cell phone in its original state to Corporal Smith. Finally, he testified that he copied the reports generated by the Lantern software system in their entirety onto the flash drive used by the Commonwealth at trial. The cell phone was returned to [Codefendant] on February 10, 2016.

Appellant argues on appeal that the Commonwealth should have been precluded from introducing the entire contents of the cell phone into evidence at trial because it did not provide the data to Appellant during discovery. At trial, the Commonwealth argued that . . . Appellant was and is still actually in possession of the cell phone and therefore, its contents were admissible. Appellant argued that she has not possessed that cell phone since her arrest on August 5, 2016. Appellant has been incarcerated since that time, and her home has since been sold at tax sale. Appellant further argued that, since criminal charges were not filed until August 5, 2016, she was not on notice of pending charges or the obligation to preserve any relevant information.

In **Brady v. Maryland**, the United States Supreme Court held that "the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." 373 U.S. 83, 87 (1963). There are three components **Brady** violation: 1) the evidence at issue must be favorable to the accused either because it is exculpatory or it is impeaching, 2) the evidence must have been suppressed by the State, either willfully or inadvertently, and 3) prejudice must have ensued.

The Commonwealth has no duty to provide evidence in a form that the defendant demands for the convenience of the defense. **Commonwealth v. Robinson**, 122 A.3d 367, 373 (Pa. Super. 2015). "If the Commonwealth is secure from a post-trial **Brady** challenge on the grounds that the evidence was disclosed and accessible to defense counsel, it cannot simultaneously be precluded from entering portions of that evidence due to sheer speculation that counsel, despite that equal access, would presumptively fail to examine that material." [**Maldonodo**, 173 A.3d at 783-84 (footnote omitted)]. . . .

The thumb drive contained the entire contents of Appellant's cell phone; therefore, when the phone was returned to [Codefendant] by the state police on February 10, 2016, the evidence was equally available to Appellant. The evidence was no longer in the "exclusive control" of the Commonwealth. This is not an issue of the Commonwealth's constitutional duty of disclosure. It was known to Appellant that the Commonwealth had the entire contents of Appellant['s] cell phone well before trial commenced. The cell phone was in Appellant['s] possession from February 10, 2016 until August 5, 2016.

During trial, the Commonwealth noted that discovery was provided to Appellant on January 24, 2017. Appellant did not file a motion to compel or specifically request that the Commonwealth disclose the extraction report and/or the entire contents of the thumb drive. Furthermore, based on Detective [Christian] Robinson's testimony as to the extraction process, the contents of the cell phone were not altered in any way before it was returned to [Codefendant]. [Codefendant] himself picked up the cell phone from the state police, and therefore, the evidence was disclosed and accessible to Appellant and counsel.

Once the Commonwealth had put the entire contents of the thumb drive into evidence, Appellant was free to display other text messages and play other videos and/or parts of videos previously published by the Commonwealth for the jury's consideration.

Trial Ct. Op., 3/13/18, at 3-5.

Appellant raises the following issues on appeal:

[1]. The trial court abused its discretion by allowing into evidence the contents of a flash drive holding the entire contents of the Appellant's cell phone, consisting of thousands of text messages, photographs, and video, on the Commonwealth's assertion that the Appellant had access to the contents of the cell phone, over the Appellant's objection, without conducting a fact-finding hearing to determine the truth of the Commonwealth's assertion.

[2]. The failure of the trial court to determine the facts as to whether the Appellant did have access to her cell phone after the commencement of this prosecution before ruling on Appellant's objection to the introduction of undisclosed evidence was an abuse of discretion as the trial court had no factual basis on which to make its ruling.

- 7 -

Appellant's Brief at 10. Because Appellant's issues are closely related, we address them together.

Appellant argues that under Pa.R.Crim.P. 573(B)(1), the Commonwealth had a mandatory obligation to disclose the entire contents of Appellant's phone once Appellant filed a general request for discovery. *Id.* at 17-18. According to Appellant, the videos were material. Appellant notes that the Commonwealth, during trial and closing argument, "selected and played for the jury nine videos . . . carefully selected from the many" contained on the phone. *Id.* at 17. Appellant claims that because the Commonwealth disclosed two text messages in response to her request for discovery, the Commonwealth implied that the remaining data on Appellant's phone was not material. *Id.* at 17.

Appellant also asserts that the trial court erred in accepting the Commonwealth's arguments in support of its proffer. First, Appellant contends there were insufficient facts for the trial court to determine that she had equal access to the contents of the phone. *Id.* at 18. Appellant emphasizes that she lost the phone. Second, Appellant disputes the Commonwealth's suggestion that Appellant's counsel should have requested copies of the information recovered from the phone. *Id.* at 19. Third, Appellant argues that the Commonwealth misled the trial court into believing she still had the phone. *Id.* at 20-21.

As to prejudice, Appellant notes that "[t]he videos were more in the nature of demeanor evidence than substantive evidence, in that they showed

[her] in a poor light, angry and raising her voice at [Complainant], rather than establishing or corroborating any of the elements of the crimes charged." *Id.* at 21. Appellant contends that the videos were a significant part of trial because she elected to testify and her credibility was at issue. *Id.* Appellant adds that the late disclosure of the videos prevented her from developing a defense and presenting evidence in response to the videos.[8] *Id.* at 22.

In sum, Appellant contends that the Commonwealth acted in bad faith when it failed to disclose the entire contents of Appellant's phone before trial. Appellant, therefore, claims that the trial court should have excluded the contents of her phone as a sanction for the Commonwealth's discovery violation. *Id.* at 20.

"Decisions involving discovery matters are within the sound discretion of the trial court and will not be overturned absent an abuse of that discretion." *Commonwealth v. Santos*, 176 A.3d 877, 882 (Pa. Super. 2017) (citation and quotation marks omitted), *appeal denied*, 189 A.3d 986 (Pa. 2018). "An abuse of discretion is not merely an error of judgment, but is rather the overriding or misapplication of the law, or the exercise of judgment that is manifestly unreasonable, or the result of bias, prejudice, ill-will or partiality, as shown by the evidence of record." *Id.* (citation and quotation marks omitted).

---

[8] Appellant does not raise any arguments that the presentation of the text messages resulted in prejudice.

The purpose of the discovery rules is to prevent a trial by ambush that violates a defendant's right to due process. ***Commonwealth v. Ulen***, 650 A.2d 416, 419 (Pa. 1994) (discussing the prior version of Pa.R.Crim.P. 573). Pennsylvania Rule of Criminal Procedure 573 provides, in relevant, part:

**(B) Disclosure by the Commonwealth.**

(1) *Mandatory*. In all court cases, on request by the defendant, and subject to any protective order which the Commonwealth might obtain under this rule, the Commonwealth shall disclose to the defendant's attorney all of the following requested items or information, provided they are material to the instant case. The Commonwealth shall, when applicable, permit the defendant's attorney to inspect and copy or photograph such items.

(a) Any evidence favorable to the accused that is material either to guilt or to punishment, and is within the possession or control of the attorney for the Commonwealth;

\* \* \*

(e) any results or reports of scientific tests, expert opinions, and written or recorded reports of polygraph examinations or other physical or mental examinations of the defendant that are within the possession or control of the attorney for the Commonwealth; [and]

(f) any tangible objects, including documents, photographs, fingerprints, or other tangible evidence[.]

\* \* \*

(2) *Discretionary With the Court*.

(a) In all court cases, except as otherwise provided in Rules 230 (Disclosure of Testimony Before Investigating Grand Jury) and 556.10 (Secrecy; Disclosure), if the defendant files a motion for pretrial discovery, the court may order the Commonwealth to allow the defendant's attorney to inspect and copy or photograph any of the following requested items, upon a showing that they are material to the

preparation of the defense, and that the request is reasonable:

\* \* \*

(iv) any other evidence specifically identified by the defendant, provided the defendant can additionally establish that its disclosure would be in the interests of justice.

\* \* \*

**(E) Remedy**. If at any time during the course of the proceedings it is brought to the attention of the court that a party has failed to comply with this rule, the court may order such party to permit discovery or inspection, may grant a continuance, or may prohibit such party from introducing evidence not disclosed, other than testimony of the defendant, or it may enter such other order as it deems just under the circumstances.

Pa.R.Crim.P. 573(B)(1)(a)(e)-(f), (2)(a)(iv), (E).

The duties to disclose information imposed by **Brady** and Rule 573 are overlapping, but they are not identical. **See Maldonodo**, 173 A.3d at 774; **see also Commonwealth v. Sullivan**, 820 A.2d 795, 802-03 (Pa. Super. 2003). The focus of **Brady** is the prompt disclosure of evidence that is favorable to the defense, which is incorporated in Rule 573(B)(1)(a). Rule 573 is broader to the extent it requires disclosure of inculpatory information. **See Sullivan**, 820 A.2d at 803-04.

Nevertheless, this Court has often analyzed claims involving Rule 573 using principles from **Brady**. **Id.** For example, in the context of **Brady**, it is well settled that "no **Brady** violation occurs where the parties had equal access to the information or if the defendant knew or could have uncovered such evidence with reasonable diligence." **Commonwealth v. Morris**, 822 A.2d

684, 696 (Pa. 2003) (citation omitted). In the context of Rule 573, this Court has also noted: "Where evidence is equally accessible to both the prosecution and the defense, the latter cannot employ [the discovery rules] against the Commonwealth." *See Santos*, 176 A.3d at 883 (citations omitted).

Furthermore, Rule 573 does not require the Commonwealth to divulge its trial tactics or how it may use certain information, and defense counsel has a duty to investigate available information for possible evidence. *See Maldonodo*, 173 A.3d at 783-84; *Commonwealth v. Monahan*, 549 A.2d 231, 235 (Pa. Super. 1988). Similarly, Rule 573 does not entitle a defendant to information in a form most helpful or convenient to the defendants. *See Maldonodo*, 173 A.3d at 783; *Robinson*, 122 A.3d at 373-74. Nevertheless, courts have cautioned that "[b]ecause we are dealing with an inevitably imprecise standard [regarding materiality], and because the significance of an item of evidence can seldom be predicted accurately until the entire record is complete, the prudent prosecutor will resolve doubtful questions in favor of disclosure." *Maldonodo*, 173 A.3d at 781-82 (citation omitted).

Even if the Commonwealth violates the disclosure requirements of Rule 573,

> [t]he trial court has broad discretion in choosing the appropriate remedy for a discovery violation. . . . A defendant seeking relief from a discovery violation must demonstrate prejudice. A violation of discovery "does not automatically entitle [an] appellant to a new trial." Rather, [the defendant] must demonstrate how a more timely disclosure would have affected his trial strategy or how he was otherwise prejudiced by the alleged late disclosure.

*Commonwealth v. Brown*, 200 A.3d 986, 993 (Pa. Super. 2018) (citations omitted). This Court has suggested that in most cases, "[a] continuance is appropriate where the undisclosed statement or other evidence is admissible and the defendant's only prejudice is surprise." *Commonwealth v. Smith*, 955 A.2d 391, 395 (Pa. Super. 2008) (*en banc*) (citation omitted).

Instantly, as noted by the trial court, Appellant was aware that the Pennsylvania State Police seized and analyzed her phone, and that the Commonwealth recovered evidence from her phone. Additionally, the record supports the trial court's findings that Appellant's phone was returned to Codefendant before criminal charges were filed, and that Appellant was aware that her phone could have contained unfavorable evidence.

Yet, there is also no dispute that Appellant requested discovery after the charges were filed, and that the Commonwealth had in its possession the Lantern report and the entire contents of Appellant's phone. In response to Appellant's request for discovery, the Commonwealth provided copies of two text messages that it extracted from Appellant's phone. The record contains no indication that the Commonwealth provided Appellant with a copy of the extraction report or a copy of the flash drive in response to Appellant's request for pretrial discovery, or before seeking admission of the contents of Appellant's phone at trial.

Under these circumstances, we do not read *Maldonodo* and *Robinson* as broadly as the Commonwealth and the trial court. In *Maldonado* and *Robinson*, the Commonwealth disclosed information before trial, *i.e.*,

recordings of the defendant's Spanish language prison calls in *Maldonodo*, and a recording of a victim's interview in *Robinson*. *See Maldonodo*, 173 A.3d at 771; *Robinson*, 122 A.3d at 373. In *Maldonodo*, the Commonwealth specifically identified two phone calls it believed were inculpatory, but disclosed all of the recordings the defendant's 466 prison phone calls. *Maldonodo*, 173 A.3d at 771-72. The issue in those cases was whether the Commonwealth had duties to provide the defense with additional information, such as a certified translations of the prison calls or a transcript of the video recording. *See Maldonodo*, 173 A.3d at 781; *Robinson*, 122 A.3d at 373.

This Court, in both *Maldonodo* and *Robinson*, reversed the trial court's pretrial ruling precluding the Commonwealth from presenting evidence based on the failure to provide additional information. *See Maldonodo*, 173 A.3d at 771; *Robinson*, 122 A.3d at 369. In so doing, this Court noted that the Commonwealth had no duty to assist the defendant in finding evidence favorable to the defendant when the Commonwealth provided the information to the defense. *See Maldonodo*, 173 A.3d at 783; *Robinson*, 122 A.3d at 371.

The present case, however, raises different issues and facts than those addressed in *Maldonodo* and *Robinson*. First, the information here contained evidence that was unfavorable to the defense. Second, the Commonwealth did not provide the information in its possession during discovery. Indeed, there is no indication in the record that the Commonwealth even provided Appellant's counsel with a courtesy copy of the flash drive when

it moved the contents of Appellant's phone into evidence. Third, unlike **Maldonodo**, the Commonwealth initially indicated that that it intended to use two text messages at trial, but then moved the entire contents of Appellant's phone into evidence.

Therefore, we do not find **Maldonodo** and **Robinson** to be controlling authorities in this case. Accordingly, we do not agree with the trial court's legal reasons for excusing the Commonwealth of any duty to disclose unfavorable evidence under Rule 573.

Even if the Commonwealth violated Rule 573, however, Appellant's claims of surprise and prejudice do not merit relief. **See Brown**, 200 A.3d at 993; **accord Smith**, 955 A.2d at 395. The fact that Appellant was, or should have been, aware of the additional unfavorable videos on the phone belies Appellant's claim of surprise. Moreover, Appellant did not request a continuance to review the additional evidence, and she explained the videos during her own testimony. **Cf. Smith**, 955 A.2d at 395. Lastly, although Appellant suggests that that she could have more effectively rebutted the videos if the Commonwealth disclosed the evidence in a more timely fashion, Appellant does not establish that her trial preparation or strategy would have been different had the information been disclosed. Under these circumstances, we conclude Appellant has not established that that the admission of the entire contents of her phone constituted reversible error under Rule 573. **See Santos**, 176 A.3d at 882.

Judgment of sentence affirmed.

*Judgment Entered.*

*Joseph D. Seletyn, Esq.*
*Prothonotary*


*Date: 5/24/2019*